David E. Bower (SBN 119546)
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (213) 446-6652
Fax: (212) 202-7880
dbower@monteverdelaw.com

*Counsel for Plaintiff Ronald Blackwell*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| RONALD BLACKWELL, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 5:20-cv-5365 |
| Plaintiff, | **COMPLAINT** |
| v. | **CLASS ACTION** |
| FORESCOUT TECHNOLOGIES INC., MICHAEL DECESARE, THERESIA GOUW, JAMES BEER, DAVID DEWALT, ELIZABETH HACKENSON, MARK JENSEN, KATHY MCELLIGOTT, ENRIQUE SALEM, and HEZY YESHURUN, | **DEMAND FOR JURY TRIAL** |
| | 1. **VIOLATION OF SECTION 14(e) OF THE SECURITIES EXCHANGE ACT OF 1934** |
| Defendants. | 2. **VIOLATION OF SECTION 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** |
| | 3. **BREACH OF FIDUCIARY DUTIES** |

Plaintiff Ronald Blackwell ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.      This action is brought by Plaintiff as class action against Forescout Technologies, Inc. ("Forescout" or the "Company") and the members of the Company's board of directors

(collectively referred to as the "Board" or the "Individual Defendants" and, together with Forescout, the "Defendants") for their violations of Sections 14(e) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(e) and 78t(a), respectively. Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duties under state law. Plaintiff's claims arise in connection with the proposed tender offer ("Tender Offer") by Ferrari Group Holdings, L.P. ("Parent") and Ferrari Merger Sub, Inc. ("Merger Sub"), affiliates of Advent International Corporation (together with Parent and Merger Sub "Advent"), to acquire all of the issued and outstanding shares of Forescout (the "Proposed Transaction").

2.      On February 6, 2020, Forescout and Advent entered into an agreement and plan of merger (the "Initial Merger Agreement"), pursuant to which Forescout's shareholders would be entitled to receive $33.00 per share in cash for each share of Forescout common stock they own (the "Initial Consideration"). On March 3, 2020 Forescout issue a proxy statement soliciting shareholders to vote in favor of the Initial Merger Agreement, and on April 23, 2020, Forescout shareholders approved the Initial Merger Agreement.

3.      However, three days before the Initial Merger was scheduled to close, Advent informed Forescout that it had concluded that certain closing conditions provided in the Initial Merger Agreement could not be met, and as a result Advent would not consummate the acquisition.

4.      On July 15, 2020, Forescout entered into a new agreement and plan of merger with Advent and its subsidiaries (the "Merger Agreement"), whereby shareholders of Forescout common stock will receive $29.00 in cash for each share of Forescout stock they own (the "Offer Price").

5.      In renegotiating a deal with Advent, the officers and directors of the Company abandoned the interests of shareholders in pursuit of their own personal benefits. Indeed one of the primary new features present in the Merger Agreement that was absent from the Initial Merger Agreement is the ability for certain shareholders and certain holders of Forescout Stock-Based Awards and/or Forescout Options, including Forescout's executive officers, to roll their equity over into the combined company and continue to share in the future growth of the Company. This rollover comes at the expense of common shareholders, who will now receive four dollars less per

share from the Initial Consideration. This unfair sales process represents a breach of the fiduciary duties of the Individual Defendants.

6.      On July 20, 2020, in order to convince Forescout shareholders to tender their shares, the Board authorized the filing of a materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "Recommendation Statement") with the Securities and Exchange Commission ("SEC"). In particular, the Recommendation Statement contains materially incomplete and misleading information concerning: (i) the Company's financial projections; (ii) the valuation analyses performed by the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley"); (iii) the conflicts of interest facing Morgan Stanley; (iv) the conflicts of interest facing the Company's officers and directors; and (v) the background of the offer. These material misstatements and omissions represent violations of the Exchange Act and breaches of the Individual Defendants' duty of candor/disclosure.

7.      The Tender Offer is scheduled to expire at the end of the day, one minute after 11:59 p.m., Eastern time on August 20, 2020 (the "Expiration Date"). It is imperative that the material information that has been omitted from the Recommendation Statement is disclosed to the Company's shareholders prior to the forthcoming Expiration Date so they may make an informed determination on whether to tender their shares.

8.      For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from closing the Tender Offer or taking any steps to consummate the Proposed Transaction, unless and until the material information discussed below is disclosed to Forescout shareholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act and breaches of fiduciary duty.

## JURISDICTION AND VENUE

9.      This Court has original jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e) and 20(a) of the Exchange Act.

10.      The Court has supplemental jurisdiction over the state law claim for breach of fiduciary duty pursuant to 28 U.S.C. § 1367.

11.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1305 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section of the Act confers personal jurisdiction over the defendant in any federal district court." *Id*. At 1316.

12.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as pursuant to 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Forescout maintains its principal place of business in this District and each of the Individual Defendants, and Company officers or directors, either resides in this District or has extensive contacts within this District; (iii) a substantial portion of the transactions and wrongs complained of herein occurred in this District; (iv) most of the relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (v) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**CLASS ACTION ALLEGATIONS**

13.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Forescout (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

14.     This action is properly maintainable as a class action because:

a.     The Class is so numerous that joinder of all members is impracticable.  As of July 15, 2020, there were 49,602,911 shares of Forescout common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country.

The actual number of public stockholders of Forescout will be ascertained through discovery;

b.     There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i)     whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Recommendation Statement, in violation of Sections14(e) of the Exchange Act;

ii)     whether the Individual Defendants have violated Section 20(a) of the Exchange Act;

iii)     whether the Individual Defendants have breached their fiduciary duties; and

iv)     whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to tender their shares based on the materially incomplete and misleading Recommendation Statement;

c.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

CLASS ACTION COMPLAINT

1      15.     A class action is superior to other available methods for fairly and efficiently

2    adjudicating the controversy

3                                     **PARTIES**

4      16.     Plaintiff is, and has been continuously throughout all times relevant hereto, the

5    owner of Forescout common stock.

6      17.     Defendant Forescout is a Delaware corporation with its principal executive offices

7    located at 190 West Tasman Drive, San Jose, California 95134.

8      18.     Defendant Michael DeCesare ("DeCesare") is, and has been at all relevant times,

9    the Company's President and Chief Executive Officer and a director of the Company.

10      19.     Defendant Theresia Gouw ("Gouw") is, and has been at all relevant times, the Chair

11   of the Company's Board of Directors.

12      20.     Defendant James Beer ("Beer") is, and has been at all relevant times, a director of

13   the Company.

14      21.     Defendant David DeWalt ("DeWalt") is, and has been at all relevant times, a

15   director of the Company.

16      22.     Defendant Elizabeth Hackenson ("Hackenson") is, and has been at all relevant

17   times, a director of the Company.

18      23.     Defendant Mark Jensen ("Jensen") is, and has been at all relevant times, a director

19   of the Company.

20      24.     Defendant Kathy McElligott ("McElligott") is, and has been at all relevant times, a

21   director of the Company.

22      25.     Defendant Enrique Salem ("Salem") is, and has been at all relevant times, a director

23   of the Company.

24      26.     Defendant Hezy Yeshurun ("Yeshurun") is a co-founder of the Company and the

25   former Chair of Company's Board of Directors, and has been at all relevant times, a director of

26   the Company.

27

28

CLASS ACTION COMPLAINT

27.     The Defendants identified in paragraphs 18 through 26 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with the Company, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

## I.     Background and the Proposed Transaction

28.     Forescout is a provider of device visibility and control solutions. The Company provides real-time identification, classification, assessment and continuous control over the devices, that collectively, comprise an organization's network. The Company's network extends across the campus information technology (IT) devices, the campus Internet of Things (IoT) devices, operational technology (OT) devices, the data center and within the third-party cloud. The Company offers Forescout platform, which provides organizations with situational awareness of extended enterprise and the ability to orchestrate actions to reduce cyber risk. The Company offers products such as eyesight, eyeSegment, eyeControl, eyeExtend, eyeManage and SilentDefense.

29.     Advent is a private equity firm which invests in business, financial services, healthcare, industrial, retail, consumer, and leisure sectors, as well as offers investment advisory, wealth management, due diligence, and evaluation services. Advent has $48 billion in assets under management.

30.     In October 2019, Forescout hired Morgan Stanley to conduct a sales process. In November 2019, Forescout originally prepared its operating plan for 2019-2023, referred to as the Target Plan:

| (Dollars in millions)[1] | Target Plan | | | | | Extrapolations | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2019E | 2020E | 2021E | 2022E | 2023E | 2024E | 2025E | 2026E | 2027E | 2028E | 2029E |
| Revenue | $ 342 | $ 389 | $ 442 | $ 505 | $ 616 | $ 732 | $ 846 | $ 952 | $ 1,041 | $ 1,105 | $ 1,138 |
| Non-GAAP EBIT[2] | $ (36) | $ 13 | $ 34 | $ 46 | $ 88 | $ 121 | $ 158 | $ 199 | $ 240 | $ 280 | $ 313 |
| Depreciation | $ 8 | $ 10 | $ 13 | $ 18 | $ 23 | $ 29 | $ 33 | $ 34 | $ 36 | $ 35 | $ 34 |
| EBITDA[3] | $ (27) | $ 23 | $ 48 | $ 63 | $ 111 | $ 150 | $ 191 | $ 233 | $ 276 | $ 315 | $ 347 |
| Stock-based compensation | $ (54) | $ (50) | $ (51) | $ (53) | $ (55) | $ (55) | $ (55) | $ (55) | $ (55) | $ (55) | $ (55) |
| Taxes | $ 0 | $ 0 | $ 0 | $ 0 | $ (8) | $ (16) | $ (26) | $ (36) | $ (46) | $ (56) | $ (64) |
| Change in deferred revenue | $ 26 | $ 26 | $ 140 | $ 180 | $ 161 | $ 155 | $ 139 | $ 116 | $ 87 | $ 56 | $ 25 |
| Change in net working capital | $ (3) | $ (33) | $ (63) | $ (30) | $ (35) | $ (37) | $ (36) | $ (33) | $ (28) | $ (20) | $ (10) |
| Capital expenditures | $ (8) | $ (12) | $ (18) | $ (24) | $ (32) | $ (35) | $ (38) | $ (39) | $ (39) | $ (37) | $ (34) |
| Unlevered free cash flow[4] | $ (66) | $ (46) | $ 56 | $ 136 | $ 142 | $ 161 | $ 175 | $ 186 | $ 195 | $ 202 | $ 208 |

CLASS ACTION COMPLAINT

31.     In January 2020, Forescout management performed a bottoms-up analysis reflecting a bottoms-up analysis of Forescout's sales pipeline, a bottoms-up expense analysis, and Forescout's results for the fourth quarter of 2019, referred to as the Alternate Plan:

| (Dollars in millions)[1] | Alternate Plan | | | | | Extrapolations | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2019E | 2020E | 2021E | 2022E | 2023E | 2024E | 2025E | 2026E | 2027E | 2028E | 2029E |
| Revenue | $ 337 | $ 386 | $ 417 | $ 464 | $ 549 | $ 635 | $ 718 | $ 794 | $ 858 | $ 905 | $ 933 |
| Non-GAAP EBIT[2] | $ (38) | $ 4 | $ 20 | $ 33 | $ 64 | $ 91 | $ 122 | $ 156 | $ 191 | $ 225 | $ 256 |
| Depreciation | $ 8 | $ 10 | $ 13 | $ 17 | $ 23 | $ 25 | $ 27 | $ 28 | $ 29 | $ 29 | $ 28 |
| EBITDA[3] | $ (29) | $ 14 | $ 33 | $ 50 | $ 87 | $ 116 | $ 149 | $ 184 | $ 220 | $ 254 | $ 284 |
| Stock-based compensation | $ (55) | $ (56) | $ (57) | $ (58) | $ (58) | $ (58) | $ (58) | $ (58) | $ (58) | $ (58) | $ (58) |
| Taxes | $ 0 | $ 0 | $ 0 | $ 0 | $ (1) | $ (8) | $ (16) | $ (24) | $ (33) | $ (42) | $ (50) |
| Change in deferred revenue | $ 16 | $ 36 | $ 129 | $ 175 | $ 172 | $ 157 | $ 134 | $ 106 | $ 75 | $ 46 | $ 20 |
| Change in net working capital | $ 13 | $ (66) | $ (50) | $ (35) | $ (34) | $ (27) | $ (26) | $ (24) | $ (20) | $ (15) | $ (9) |
| Capital expenditures | $ (8) | $ (12) | $ (18) | $ (24) | $ (32) | $ (31) | $ (32) | $ (33) | $ (32) | $ (30) | $ (28) |
| Unlevered free cash flow[4] | $ (63) | $ (84) | $ 37 | $ 107 | $ 134 | $ 149 | $ 151 | $ 151 | $ 152 | $ 154 | $ 160 |

32.     Notably, the Alternate Plan significantly downgraded the Company's projections for years 2020-2023. In March 2020—after the Initial Merger Agreement and once the Company was already sold—it was approved by the Forescout Board as Forescout's operating plan for 2020.

33.     On February 6, 2020, Forescout and Advent entered into the Initial Merger Agreement and issued a press release announcing it, which stated in relevant part:

**Forescout to be Acquired by Advent International in $1.9 Billion Transaction**

SAN JOSE, Calif., Feb. 06, 2020 (GLOBE NEWSWIRE) -- Forescout Technologies, Inc. (NASDAQ:FSCT, "Forescout"), the leader in device visibility and control, today announced that it has entered into a definitive agreement under which Advent International ("Advent"), one of the largest and most experienced global private equity investors, will acquire all outstanding shares of Forescout common stock for $33.00 per share in an all-cash transaction valued at $1.9 billion. Advent will be joined by Crosspoint Capital Partners ("Crosspoint Capital"), a private equity investment firm focused on the cybersecurity and privacy industries, as a co-investor and advisor.

The purchase price represents a premium of approximately 30% over Forescout's closing share price of $25.45 on October 18, 2019, the last full trading day prior to the release of the 13-D filings by Corvex Management L.P. and Jericho Capital Asset Management L.P. on October 21, 2019, which disclosed they had formed a partnership to approach Forescout and accumulated a combined 14.5% ownership in the company. Upon completion of the transaction, Forescout will become a private company with the flexibility to continue investing in the development and deployment of leading-edge cybersecurity products and solutions that serve the evolving needs of enterprise customers. CEO and President Michael DeCesare will continue to lead the company, and Forescout will continue to be headquartered in San Jose, California.

"Forescout has established itself as a leader in device visibility and control, with the most advanced platform in the market," said Michael DeCesare, CEO and

President, Forescout. "We are still in early innings of a large market opportunity as every organization needs visibility into what is connecting to their network and how to mitigate against high risk devices, including non-traditional IoT and OT devices. This transaction represents an exciting new phase in the evolution of Forescout. We are excited to be partnering with Advent International and Crosspoint Capital, premier firms with security DNA and track records of success in strengthening companies and supporting them through transitionary times. We look forward to working with Advent and Crosspoint Capital to advance our strategic objectives and want to thank our employees for their continued hard work and commitment to Forescout."

"We are pleased to have reached this agreement with Advent, which delivers significant immediate value to shareholders, and positions Forescout to continue meeting and exceeding the expectations of our customers," said Theresia Gouw, Chair of the Forescout Board. "This transaction, which is the result of a robust process conducted by the Board of Directors with the assistance of independent legal and financial advisors, is a testament to the value Forescout has created and the reputation our team has built. In making its determination, the Board of Directors considered the likely volatility associated with the business model transition to ratable revenue recognition, changes to our go-to-market initiatives, particularly in EMEA, and timing of significant eight-figure deals, while managing to quarterly street estimates as a publicly traded company. We are confident that this transaction is the best path forward for Forescout and our stakeholders."

"Forescout is an ideal partner for Advent — as it's a mission-critical business positioned to capitalize on key tech megatrends," said Bryan Taylor, head of Advent's technology investment team and a Managing Partner in Palo Alto. "The company has differentiated itself from its core competitors with its proprietary, agentless technology, making it ideal for large, complex organizations in a rapidly evolving cyber risk landscape. In partnership with Greg Clark and the Crosspoint Capital team, Advent is thrilled to work with Forescout to build on its record of innovation and continue delivering world-class cybersecurity solutions to customers for years to come."

"As enterprises continue to shift to the cloud and decentralized networks, today's chief information security officers are looking for secure solutions to increase visibility and provide orchestration, making their network controls more seamless," said Greg Clark, Managing Partner at Crosspoint Capital. "Forescout's platform is already ahead of the curve, and we believe we can further advance the company's market position by applying the collective experience and expertise in cybersecurity software of the Advent and Crosspoint Capital team."

Transaction Details

Under the terms of the agreement, which has been unanimously approved by the Forescout Board of Directors, Forescout shareholders will receive $33.00 in cash for each share of common stock they own.

The agreement includes a 30-day "go-shop" period expiring on March 8, 2020, which permits Forescout's Board of Directors and advisors to solicit alternative acquisition proposals from third parties. Forescout will have the right to terminate the merger agreement to enter into a superior proposal subject to the terms and conditions of the merger agreement. There can be no assurance that this "go-shop" will result in a superior proposal, and Forescout does not intend to disclose developments with respect to the solicitation process unless and until it determines such disclosure is appropriate or is otherwise required.

CLASS ACTION COMPLAINT

The transaction is expected to close in the second calendar quarter of 2020, subject to customary closing conditions, including approval by Forescout shareholders and receipt of regulatory approvals. Upon completion of the transaction, Forescout common stock will no longer be listed on any public market.

Fourth Quarter and Full Year 2019 Conference Call Update

Separately, Forescout today announced its fourth quarter and full year 2019 financial results, which are available on the "Investor Relations" section of the Forescout website. In light of the announced transaction with Advent International, Forescout has cancelled the earnings conference call previously scheduled for February 6, 2020, at 1:30pm PT (4:30pm ET).

Advisors

Morgan Stanley & Co. LLC is serving as exclusive financial advisor to Forescout and Wilson Sonsini Goodrich & Rosati is serving as legal counsel. Ropes & Gray is serving as legal counsel to Advent International and financing for the transaction is being arranged and provided by Owl Rock Capital.

34.    On March 3, 2020, the Company filed its preliminary proxy statement soliciting shareholder approval for the Initial Merger Agreement, which provided shareholders with both the Target Plan and the Alternate Plan. On March 24, 2020, the Company filed its definitive proxy statement and set the shareholder vote for the Initial Merger Agreement for April 23, 2020, which corrected the discrepancy in the treatment of amortization of intangibles for both the Target Plan and the Alternate Plan. On April 23, 2020 Forescout shareholders approved the sale of the Company in exchange for $33 per share pursuant to the Initial Merger Agreement.

35.    On May 11, 2020, Forescout announced poor results for the first quarter of 2020, primarily due to the effect of the COVID-19 pandemic. Individual Defendant DeCesare commented:

In March, the severity of the COVID-19 pandemic sharply escalated around the world, causing some customers to delay purchasing decisions in order to prioritize employee health and safety and business continuity planning. As organizations have shifted to remote workforces, their network footprint has evolved but the need for visibility and control of all devices on the network remains imperative, regardless of whether devices reside within the confines of corporate offices or in remote, work from home environments. Forescout's platform is uniquely positioned to help enterprises in today's perimeter-less world and defend against increasingly sophisticated cyber threats. We look forward to completing our pending transaction with Advent International Corporation, which will position us for long-term success as we execute on our large and growing market opportunity.

36.    On May 15, 2020, news broke that Advent was pulling out of the Initial Merger Agreement, and that the merger would not be completed as scheduled. On May 18, 2020, Forescout issued a press release stating, in relevant part:

CLASS ACTION COMPLAINT

On May 15, 2020, Advent provided notice to Forescout that it would not be proceeding to consummate the acquisition of Forescout on May 18, 2020, as scheduled. Forescout and Advent are engaged in ongoing discussions regarding timing to close and the terms of the transaction. There can be no assurance that Forescout and Advent will be able to reach agreement on terms.

"This is an uncertain time for everyone, as businesses and communities across the world navigate the challenges created by the COVID-19 pandemic," said Michael DeCesare, CEO and President of Forescout. "We continue to believe that Advent is the right partner for Forescout and we remain committed to completing the transaction in the near-term. We thank our employees for their extraordinary efforts and commitment to Forescout, and we remain focused on continuing our course of advancing our innovation roadmap and strategic cloud and business transformation."

37.      On May 19, 2020, Forescout sued Advent in Delaware Chancery Court for breaching the Initial Merger Agreement and seeking specific performance of the Initial Merger Agreement. On May 20, 2020, Forescout issued a press release stating, in relevant part:

On May 15, 2020, Advent notified Forescout that it would not consummate the acquisition on May 18, 2020, as scheduled. Advent's purported excuse for its wrongful conduct is that a closing condition to the transaction has not been satisfied because a "material adverse effect" has occurred at Forescout. Forescout believes that no material adverse effect has occurred, that all closing conditions are satisfied, and that Advent is obligated to close the transaction. Forescout believes that Advent has relied on meritless excuses to support its position.

The merger agreement explicitly allocated the risk of any impacts from COVID-19 to Advent. Since announcing the transaction, Forescout shareholders overwhelmingly approved the transaction.

"We have satisfied all conditions to closing under our merger agreement, and a material adverse effect has not occurred," said Theresia Gouw, Chair of the Forescout Board. "The only change since the merger agreement was jointly executed in February is the deepening of the COVID-19 pandemic, which has significantly impacted global macro-economic conditions. All companies have been challenged by this pandemic, and it is highly disappointing that Advent would attempt to exploit market volatility to renege on its contractual obligations, particularly when the merger agreement explicitly excludes the effects of a pandemic as a material adverse event. Advent is required to promptly complete the transaction. We are taking immediate action to enforce Forescout's rights and ensure that Advent fulfills its obligations. We are confident that the steps that we are taking are in the best interests of Forescout and its shareholders."

"I remain confident in the strength of Forescout and its incredible team," said Michael DeCesare, CEO and President of Forescout. "Forescout is in a strong financial position, with $100 million of cash on hand as of March 31, 2020. We are well positioned for success and the fundamentals of our business have not changed. Customers around the world trust Forescout to help solve their most pressing security challenges, and that's exactly what we are doing."

38.     On May 30, 2020, Advent filed counterclaims alleging that Forescout breached the Initial Merger Agreement and that certain conditions to closing thereunder could not be met. An expedited trial schedule was granted with the trial set to take place on July 20, 2020.

39.     On June 30, 2020, Forescout closed out their second quarter for 2020. On July 1, 2020, Forescout provided Advent with certain preliminary information regarding the results of Forescout's second quarter of 2020. On July 8, 2020, Forescout publicly announced its positive preliminary financial results for the second quarter of 2020, including revenue in the range of $78-$82 million, up 40% quarter-over-quarter at the midpoint of the range. Individual Defendant DeCesare commented: "I am extremely proud of our team's performance. We remained focused and executed well, despite macroeconomic challenges and the impact of ongoing litigation with Advent International. The strength of our quarterly results shows the compelling value proposition for Forescout's solutions and that we can execute and deliver despite obstacles. We believe Advent's claims are without merit, and we are continuing to pursue our rights under the existing merger agreement."

40.     On July 12, 2020, Forescout and Advent tentatively came to terms on the Proposed Transaction at $29 per Forescout share. Members of the Board's Strategic Committee then discussed the various financial cases that could be used for the purposes of Morgan Stanley's financial analysis of Forescout. Early on July 15, 2020, before the opening of trading on Nasdaq, the Amended Merger Agreement was signed by Forescout, Parent and Purchaser, and Forescout and Advent publicly disclosed the entry into the Amended Merger Agreement. Contemporaneous with signing the Amended Merger Agreement, Forescout and Advent also signed a settlement agreement to settle and dismiss with prejudice all claims and defenses in the Advent Litigation.

41.     On July 15, 2020, Forescout and Advent issued a joint press release, which stated in relevant part:

**Forescout and Advent International Reach Amended Merger Agreement**

- Forescout Shareholders to Receive $29.00 Per Share
- Advent to Commence Tender Offer; Forescout Board Unanimously Recommends that all Shareholders Tender Their Shares in Support of the Transaction
- Agreement Provides Immediate and Certain Value

SAN JOSE, Calif. and BOSTON, Mass., July 15, 2020 (GLOBE NEWSWIRE) -- Forescout Technologies, Inc. (FSCT), the leader in device visibility and control, and Advent International ("Advent"), one of the largest and most experienced global private equity investors, today announced that the companies have agreed to amend the terms of their previously announced transaction. The Forescout Board of Directors has unanimously approved a revised definitive agreement under which Advent will acquire all outstanding shares of Forescout common stock for $29.00 per share. Advent has partnered with Crosspoint Capital Partners, a private equity investment firm focused on cybersecurity and privacy industries, as an advisor on this transaction.

Concurrently with executing the amended merger agreement, Forescout and Advent reached a settlement agreement as a result of which the pending litigation in the Delaware Court of Chancery will be dismissed.

"We continue to believe that Advent and Crosspoint Capital Partners are the right partners for Forescout, and we are pleased to have reached this agreement," said Michael DeCesare, CEO and President of Forescout. "As a private company and with the resources, expertise and support of Advent and Crosspoint Capital Partners, we will remain committed to helping customers solve their most pressing security challenges while applying greater focus to our strategic cloud transformation and our transition to a recurring subscription business model. We look forward to working with Advent and Crosspoint Capital Partners to complete the transaction and build our exciting next chapter."

"The fundamental strengths that first attracted Advent to Forescout – its differentiated technology, record of innovation, talented employee base and relentless focus on its customers – continue to make this business a compelling platform and critical player in the cybersecurity ecosystem," said Bryan Taylor, head of Advent's technology investment team and a Managing Partner in Palo Alto. "Advent and Forescout worked in good faith to reach a solution that could benefit all stakeholders. We look forward to helping Forescout continue to deliver world-class cybersecurity solutions to customers for years to come."

"We believe revising the terms of the previously announced transaction is the best path forward for Forescout because it removes the significant ongoing distraction of the pending litigation and delivers immediate and certain value to Forescout's shareholders. The Board of Directors unanimously recommends that shareholders tender their shares in support of the transaction," said Theresia Gouw, Chair of the Board of Directors.

Forescout's Board and management will be further strengthened with the additions of Crosspoint Capital Partners' Greg Clark and Nicholas Noviello following commencement of the tender offer. Mr. Clark, Managing Partner of Crosspoint Capital Partners and former CEO of Symantec and Blue Coat, both leading cybersecurity companies, will join Forescout's Board of Directors. Mr. Noviello, former Executive Vice President and CFO of Symantec and of NetApp, and CFO of Blue Coat, has over 28 years of global finance and operations, process improvement and company transformation leadership experience, and will join Forescout as COO.

Transaction Details

Under the terms of the revised merger agreement, Advent will commence a tender offer on or before July 20, 2020, to acquire all of the outstanding shares of Forescout common stock for a price of $29.00 per share. The closing of the tender offer is subject to certain limited customary conditions, including the tender by

13

Forescout shareholders of at least one share more than 50% of Forescout's issued and outstanding shares. Funds affiliated with Advent have committed to provide a full equity backstop in support of the transaction. The transaction is expected to close in the third quarter of 2020.

Promptly following completion of the tender offer, Advent will acquire any shares of Forescout that are not tendered in the tender offer through a second-step merger under Delaware law for consideration equal to the tender offer price. Following the transaction, Forescout will become a privately held company with the flexibility to continue investing in the development and deployment of leading-edge cyber security products and solutions that serve the evolving needs of enterprise customers.

The Forescout Board unanimously recommends that shareholders tender their shares in support of the transaction.

42.     Notably absent from this press release is the unique benefit of rollover shares offered only to certain shareholders, including the Company's executive officers.

**II.     The Materially Incomplete and Misleading Recommendation Statement**

43.     On July 20, 2020, Defendants filed a materially incomplete and misleading Recommendation Statement with the SEC.  The Individual Defendants were obligated to carefully review the Recommendation Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Recommendation Statement misrepresents or omits material information that is necessary for Forescout shareholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e) and 20(a) of the Exchange Act and in breach of the Individual Defendants' duty of candor/disclosure.

44.     First, the Recommendation Statement includes two new sets of financial forecasts, both of which were substantially below the already reduced Alternate Plan. The Updated Alternate Plan updates the Alternate Plan to account for Forescout's actual financial results for the first quarter of 2020 and preliminary actual financial results for the second quarter of 2020:

CLASS ACTION COMPLAINT

| (Dollars in millions)[1] | Updated Alternate Plan | | | | Extrapolations | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2020E | 2021E | 2022E | 2023E | 2024E | 2025E | 2026E | 2027E | 2028E | 2029E |
| Revenue | $ 359 | $ 414 | $ 461 | $ 549 | $ 626 | $ 700 | $ 767 | $ 824 | $ 867 | $ 893 |
| Non-GAAP EBIT[2] | $ (5) | $ 16 | $ 28 | $ 64 | $ 89 | $ 118 | $ 150 | $ 183 | $ 215 | $ 246 |
| Depreciation | $ 9 | $ 11 | $ 15 | $ 22 | $ 27 | $ 29 | $ 29 | $ 29 | $ 28 | $ 27 |
| EBITDA[3] | $ 3 | $ 27 | $ 43 | $ 85 | $ 116 | $ 147 | $ 179 | $ 212 | $ 244 | $ 272 |
| Stock-based compensation | $ (56) | $ (72) | $ (72) | $ (72) | $ (72) | $ (72) | $ (72) | $ (72) | $ (72) | $ (72) |
| Taxes | $ 0 | $ 0 | $ 0 | $ 0 | $ (4) | $ (11) | $ (19) | $ (28) | $ (36) | $ (43) |
| Change in deferred revenue | $ 36 | $ 132 | $ 180 | $ 170 | $ 133 | $ 113 | $ 90 | $ 65 | $ 40 | $ 20 |
| Change in net working capital | $ (70) | $ (50) | $ (35) | $ (34) | $ (29) | $ (28) | $ (26) | $ (22) | $ (16) | $ (10) |
| Capital expenditures | $ (8) | $ (18) | $ (24) | $ (32) | $ (34) | $ (34) | $ (34) | $ (32) | $ (30) | $ (27) |
| Unlevered free cash flow[4] | $ (95) | $ 18 | $ 92 | $ 117 | $ 110 | $ 114 | $ 118 | $ 123 | $ 130 | $ 139 |

The Strategic Committee reviewed the Updated Alternate Plan on July 13, 2020, and it was previously shared with Morgan Stanley on July 12, 2020.

45.     The July Case for scenario and business planning purposes. It represents an estimate by Forescout management of Forescout's financial performance for the remainder of 2020 through 2023 in light of current conditions (including the impact on Forescout of (1) COVID-19 (novel coronavirus); (2) the entry into the Initial Merger Agreement; and (3) the Advent Litigation, business opportunities, sales pipeline and Forescout's expense profile:

| (Dollars in millions)[1] | July Plan | | | | Extrapolations | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2020E | 2021E | 2022E | 2023E | 2024E | 2025E | 2026E | 2027E | 2028E | 2029E |
| Revenue | $ 321 | $ 317 | $ 358 | $ 410 | $ 467 | $ 522 | $ 573 | $ 615 | $ 647 | $ 666 |
| Non-GAAP EBIT[2] | $ (14) | $ 12 | $ 31 | $ 46 | $ 65 | $ 87 | $ 111 | $ 136 | $ 160 | $ 183 |
| Depreciation | $ 8 | $ 9 | $ 12 | $ 19 | $ 26 | $ 27 | $ 26 | $ 25 | $ 23 | $ 20 |
| EBITDA[3] | $ (5) | $ 21 | $ 43 | $ 65 | $ 91 | $ 113 | $ 137 | $ 160 | $ 183 | $ 203 |
| Stock-based compensation | $ (56) | $ (60) | $ (60) | $ (60) | $ (60) | $ (60) | $ (60) | $ (60) | $ (60) | $ (60) |
| Taxes | $ 0 | $ 0 | $ 0 | $ 0 | $ (1) | $ (7) | $ (13) | $ (19) | $ (25) | $ (31) |
| Change in deferred revenue | $ 12 | $ 59 | $ 59 | $ 59 | $ 98 | $ 83 | $ 66 | $ 48 | $ 30 | $ 15 |
| Change in net working capital | $ (21) | $ (15) | $ (13) | $ (17) | $ (19) | $ (19) | $ (17) | $ (14) | $ (11) | $ (7) |
| Capital expenditures | $ (6) | $ (12) | $ (24) | $ (32) | $ (33) | $ (31) | $ (31) | $ (28) | $ (25) | $ (20) |
| Unlevered free cash flow[4] | $ (77) | $ (6) | $ 5 | $ 14 | $ 75 | $ 78 | $ 82 | $ 86 | $ 92 | $ 100 |

The July Case purportedly represents Forescout management's estimate of the most likely outcome for Forescout's business over the period in light of such information. The Strategic Committee reviewed the July Case on July 13, 2020, and it was previously shared with Morgan Stanley on July 12, 2020.

46.     Yet the Recommendation Statement fails to state: (i) when either set of projections was created; (ii) whether either set of projections was prepared after the Strategic Committee agreed to the $29 offer; (iii) whether the Updated Alternate Plan took into consideration covid-19, the Initial Merger Agreement, and the Advent Litigation all of which occurred during the first and

second quarters of 2020, which the Updated Alternate Plan did purportedly account for; (iv) if not, why; (v) if so, what additional adjustments were made to the July Case; (vi) why the July Case was made at all given that the Updated Alternate Plan was almost certainly prepared in July 2020; and (vii) how the "current conditions" improve the 2020 projections for the July case but seriously downgrade the Company's projections from 2022-2029.

47.     The information regarding these two cases of projections is particularly important to Forescout shareholders, because only the July Case shows the Merger Consideration to be fair. In fact, in the valuation analyses performed by Morgan Stanley, the ranges of fairness found in each of the *Public Trading Comparables Analysis* and the *Discounted Equity Value Analysis* show the $29 Offer Price to fall below the low end of the range indicated that the actual fair value for the Company is more than $29.

48.     Moreover, both the Updated Alternate Plan and the July Case omit critical financial projections, including the net income projections (the "Net Income Projections"). Defendants elected to summarize the projections for Forescout in the Recommendation Statement, but they excised and failed to disclose the Net Income Projections. By providing this limited summary in the Recommendation Statement and withholding the Net Income Projections, Defendants render the tables of projections on pages 44-45 of the Recommendation Statement materially incomplete and provide a misleading valuation picture of Forescout.  Simply put, net income projections are irreplaceable when it comes to fully, fairly, and properly understanding a company's projections and value.

49.     Unlike poker where a player must conceal his unexposed cards, the object of a recommendation statement is to put all one's cards on the table face-up. In this case only some of the cards were exposed—the others were concealed. If a recommendation statement discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the information related to the projections relied

CLASS ACTION COMPLAINT

upon by Morgan Stanley and the Board but have omitted the above-identified material information. These omissions render the summary of the projections and the Company's financial picture in the Recommendation Statement misleadingly incomplete.

50.     Second, the Recommendation Statement describes Morgan Stanley's fairness opinion and the various valuation analyses performed in support of its opinion. Defendants concede the materiality of this information in citing Morgan Stanley's fairness opinion among "the material factors considered by the Forescout Board in its consideration of the Offer and the Merger." Recommendation Statement at 40. However, the description of Morgan Stanley's fairness opinion and analyses fails to include key inputs and assumptions underlying the analyses. Without this information, Forescout shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight—*if any*—to place on Morgan Stanley's fairness opinion in determining whether to tender their shares in the Tender Offer. *See* Recommendation Statement at 47 ("considering any portion of such analyses and of the factors considered, without considering all analyses and factors, could create a misleading or incomplete view of the process underlying Morgan Stanley's opinion."). This omitted information, if disclosed, would significantly alter the total mix of information available to Forescout shareholders.

51.     With respect to Morgan Stanley's *Discounted Cash Flow Analysis* ("DCF") beginning on Page 49, the Recommendation Statement fails to fully disclose for each analysis: (i) the inputs and assumption underlying the discount rate range from 7.6% to 9.6%; (ii) Morgan Stanley's rationale and basis for applying a range perpetuity growth rates of 1.5% to 2.5%; (iii) the present value of existing and newly created tax attributes; (iv) the value of the Company's net operating losses under each set of forecasts; and (v) the actual terminal values calculated.

52.     This information is material to the Company's shareholders, and the omission of this information renders the summary of the *Discounted Cash Flow Analysis* incomplete and misleading.  As one highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, Fairness

CLASS ACTION COMPLAINT

Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id.* As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78. Without the above-mentioned information, the Company's shareholders cannot: (i) evaluate for themselves the reliability of the *Discounted Cash Flow Analysis*, (ii) make a meaningful determination of whether the implied equity value ranges properly value the Company or were the result of an unreasonable judgment by the Financial Advisors, or (iii) make an informed decision regarding whether to tender their shares in favor of the Proposed Transaction.

53.     Similarly, in summarizing Morgan Stanley's *Discounted Equity Value Analysis* on Page 49, the Recommendation Statement fails to fully disclose: (i) Morgan Stanley's rationale and basis for selecting the Aggregate Value to 2023 Estimated Revenue Multiple Ranges of 4.5x to 6.5x for the Updated Alternate Plan and 4.0x to 6.0x for the July Case; (ii) the inputs and assumptions underlying Morgan Stanley's selection of a discount rate of 8.6%; (iii) the projected net cash; (iv) the number of fully diluted shares.

54.     Third, the Recommendation Statement fails to fully disclose material information regarding Morgan Stanley's prior relationships with Advent. On Page 53, the Recommendation Statement states that Morgan Stanley has received "approximately $30.0 million to $50.0 million in fees in connection with" advisory and financing services for Advent and its affiliates but fails to disclose (i) when these relationships were disclosed to the Strategic Committee and the Forescout Board, and (ii) the actual amount of fees that Morgan Stanley received from Advent.

55.     It is important for shareholders to be able to understand what factors might influence the financial advisor's analytical efforts. A financial advisor's own proprietary financial

interest in a proposed transaction must be carefully considered when assessing how much credence to give its analysis. A reasonable shareholder would want to know what important economic motivations that the advisor, employed by a board to assess the fairness of the transaction to the shareholders, might have. Therefore, by failing to provide this information, the Recommendation Statement presents a misleading summary of Morgan Stanley's conflicts with Advent.

56.     Fourth, the Recommendation Statement explains that Merger Agreement provides the ability for certain shareholders and certain holders of Forescout Stock-Based Awards and/or Forescout Options, including Forescout's executive officers, to rollover their equity into the combined company, but fails to provide the identity of the "Rollover Holders," including potential Board members, or how many shares they will be rolling over. Such information is extremely important to shareholders, so that they may understand what conflicts of interest those negotiating the Offer Price faced.

57.     The Recommendation Statement also fails to disclose the timing and nature of all communications and/or negotiations regarding (i) future employment and directorship of the Company's officers and directors and (ii) the rollover of shares, stock-based awards, and options by the Company's officers and directors, including who participated in all such communications. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as it pertains directly to motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

58.     Fifth, the Recommendation Statement fails to adequately disclose the details surrounding the sales process leading up to the Proposed Transaction. The Recommendation Statement references both contingent value rights and seller notes, but fails to explain material information such as the triggering conditions that would have allowed Forescout shareholders to receive more than the $29 Offer Price. Once a recommendation statement travels down the road of partial disclosure of the history leading up to a merger the duty of disclosure requires it provide

CLASS ACTION COMPLAINT

1  the stockholders with an accurate, full, and fair characterization of those historic events. Thus, by

2  omitting this important information, the Recommendation provides a misleading summary.

3      59.    In sum, the omission and/or misstatement of the above-referenced information

4  renders statements in the Recommendation Statement materially incomplete and misleading in

5  contravention of the Exchange Act and in breach of the duty of candor/disclosure. Absent

6  disclosure of the foregoing material information prior to the expiration of the Tender Offer,

7  Plaintiff and other Forescout shareholders will be unable to make a fully-informed decision

8  regarding whether to tender their shares, and they are thus threatened with irreparable harm,

9  warranting the injunctive relief sought herein.

10  **COUNT I**

11  **Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

12      60.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

13      61.    Defendants caused the Recommendation Statement to be issued with the intention

14  of soliciting shareholder support of the Proposed Transaction.

15      62.    Section 14(e) of the Exchange Act provides that it is unlawful "for any person to

16  make any untrue statement of a material fact or omit to state any material fact necessary in order

17  to make the statements made, in the light of the circumstances under which they are made, not

18  misleading . . . in connection with any tender offer or request or invitation for tenders, or any

19  solicitation of security holders in opposition to or in favor of any such offer, request, or invitation."

20  15 U.S.C. § 78n(e).

21      63.    Defendants violated this clause of Section 14(e) because they negligently caused or

22  allowed the Recommendation Statement to be disseminated to Forescout shareholders in order to

23  solicit them to tender their shares in the Tender Offer, and the Recommendation Statement

24  contained untrue statements of material fact and/or omitted to state material facts necessary in

25  order to make the statements made, in the light of the circumstances under which they were made,

26  not misleading.

27      64.    Defendants negligently omitted the material information identified above from the

28  Recommendation Statement or negligently failed to notice that such material information had been

omitted from the Recommendation Statement, which caused certain statements therein to be materially incomplete and therefore misleading.  Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.  As directors and officers of Forescout, the Individual Defendants had a duty to carefully review the Recommendation Statement before it was disseminated to the Company's shareholders to ensure that it did not contain untrue statements of material fact and did not omit material facts.  The Individual Defendants were negligent in carrying out their duty.

65.    Forescout is imputed with the negligence of the Individual Defendants, who are each directors and/or senior officers of Forescout.

66.    As a direct result of Defendants' negligent preparation, review, and dissemination of the false and/or misleading Recommendation Statement, Plaintiff and other Forescout shareholders are impeded from making a decision on a fully informed basis and are induced to tender their shares and accept the inadequate Merger Consideration in connection with the Proposed Transaction.  The false and/or misleading Recommendation Statement used to solicit the tendering of shares impedes Plaintiff and other Forescout shareholders from making a fully informed decision regarding the Tender Offer and is an essential link in consummating the Proposed Transaction, which will deprive them of full and fair value for their Forescout shares.  At all times relevant to the dissemination of the materially false and/or misleading Recommendation Statement, Defendants were aware of and/or had access to the true facts concerning the process involved in selling Forescout, the projections for Forescout, and Forescout's true value, which is greater than the Merger Consideration Forescout's shareholders will receive.

67.    The misrepresentations and omissions in the Recommendation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in the Tender Offer.  In addition, a reasonable investor would view a full and accurate disclosure as having significantly altered the "total mix" of information made available

1   in the Recommendation Statement and in other information reasonably available to shareholders.

2   Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's

3   equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that

4   Defendants' actions threaten to inflict.

5   **COUNT II**

6   **Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

7   68.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

8   69.     The Individual Defendants acted as controlling persons of Forescout within the

9   meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as

10  officers and/or directors of Forescout and participation in and/or awareness of the Company's

11  operations and/or intimate knowledge of the false and misleading statements contained in the

12  Recommendation Statement, they had the power to influence and control and did influence and

13  control, directly or indirectly, the decision making of the Company, including the content and

14  dissemination of the various statements that Plaintiff contend are false and/or misleading.

15  70.     Each of the Individual Defendants was provided with or had unlimited access to

16  copies of the Recommendation Statement alleged by Plaintiff to be misleading prior to and/or

17  shortly after these statements were issued and had the ability to prevent the issuance of the

18  statements or cause them to be corrected.

19  71.     In particular, each of the Individual Defendants had direct and supervisory

20  involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

21  the power to control and influence the particular transactions giving rise to the violations as alleged

22  herein, and exercised the same.   The Recommendation Statement contains the unanimous

23  recommendation of the Individual Defendants to approve the Proposed Transaction.   They were

24  thus directly involved in the making of the Recommendation Statement.

25  72.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the

26  Exchange Act.

27  73.     As set forth above, the Individual Defendants had the ability to exercise control

28  over and did control a person or persons who have each violated Section 14(e) of the Exchange

Act, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

**Against the Individual Defendants for Breaches of Their Fiduciary Duties**

74.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

75.     By virtue of their role as directors and/or officers of the Company, the Individual Defendants are in a fiduciary relationship with Plaintiff and the other public stockholders of Forescout and owe them a duty of care, loyalty, good faith, candor, and independence.

76.     To diligently comply with their fiduciary duties, the Director Defendants may not take any action that:  (a) adversely affects the value provided to the Company's stockholders; (b) favors themselves or discourages or inhibits alternative offers to purchase control of the corporation or its assets; (c) adversely affects their duty to search and secure the best value reasonably available under the circumstances for the Company's stockholders; (d) will provide the Director Defendants with preferential treatment at the expense of, or separate from, the public stockholders; and/or (e) contractually prohibits the Director Defendants from complying with or carrying out their fiduciary duties.

77.     The fiduciary duties of loyalty and good faith require the Individual Defendants to refrain from: (a) participating in any transaction where the Director Defendants' loyalties are divided; (b) participating in any transaction where the Director Defendants receive, or are entitled to receive, a personal financial benefit not equally shared by the public stockholders of the corporation; and/or (c) unjustly enriching themselves at the expense or to the detriment of the public stockholders.

78.     As alleged herein, the Individual Defendants breached their duties of loyalty and good faith by extracting non-ratable personal benefits for themselves and the executive officers of

the Company in the form of rollover equity allowing them to continue in the growth of the Company while forcing common shareholders to be cashed out at the lower Offer Price.

79.     The fiduciary duty of candor/disclosure requires the Individual Defendants to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Recommendation Statement did not omit any material information or contain any materially misleading statements.

80.     As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Recommendation Statement to be disseminated to Plaintiff and the Company's other public shareholders.

81.     The misrepresentations and omissions in the Recommendation Statement are material, and Plaintiff will be deprived of his right to make an informed decision on whether to tender his shares if such misrepresentations and omissions are not corrected prior to the Expiration Date. Where a shareholder has been denied one of the most critical rights he or she possesses— the right to fully informed corporate suffrage—the harm suffered is an individual and irreparable harm.

82.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands relief in his favor, in favor of the class, and against the Defendants jointly and severally, as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel.

B.     Preliminarily enjoining Defendants and their counsel, agents, employees, and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, until Defendants disclose the material information identified above that has been omitted from the Recommendation Statement;

CLASS ACTION COMPLAINT

1    C.      Rescinding, to the extent already implemented, the Merger Agreement or any of

2  the terms thereof, or granting Plaintiff rescissory damages;

3    D.      Directing the Defendants to account to Plaintiff and the Class for all damages

4  suffered as a result of their wrongdoing;

5    E.      Awarding Plaintiff the costs and disbursements of this action, including reasonable

6  attorneys' and expert fees and expenses; and

7    F.      Granting such other and further equitable relief as this Court may deem just and

8  proper.

9                                    **JURY DEMAND**

10    Plaintiff demands a trial by jury.

11

12  DATED:  August 4, 2020                    Respectfully submitted,

13                                            */s/ David E. Bower*
                                            David E. Bower
   **OF COUNSEL**

14

15  **MONTEVERDE & ASSOCIATES PC**          David E. Bower SBN 119546
   Juan E. Monteverde                      **MONTEVERDE & ASSOCIATES PC**
16  The Empire State Building               600 Corporate Pointe, Suite 1170
   350 Fifth Avenue, Suite 4405            Culver City, CA 90230
17  New York, New York 10118                Tel: (213) 446-6652
   Tel:  212-971-1341                      Fax: (212) 202-7880
18  Fax:  212-202-7880                      dbower@monteverdelaw.com
   jmonteverde@monteverdelaw.com
19                                          *Counsel for Plaintiff*

20  **ADEMI & O'REILLY, LLP**
   Guri Ademi
21  Jesse Fruchter
   3620 East Layton Avenue
22  Cudahy, Wisconsin 53110
   Tel: (414) 482-8000
23  Fax: (414) 482-8001
   Email: gademi@ademilaw.com
24          jfruchter@ademilaw.com

25
   *Counsel for Plaintiff*
26

27

28

CLASS ACTION COMPLAINT